IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02375-WJM-CBS (consolidated with Civil Action No. 16-cv-01446-WJM-CBS)

DANIEL HUBBARD, and
MARGARET HUBBARD,

                Plaintiffs,

v.

ARGENT MORTGAGE COMPANY, LLC,
CITI RESIDENTIAL LENDING, INC.,
CITIGROUP MORTGAGE LOAN TRUST INC.,
CITIMORTGAGE, INC.,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and
U.S. BANK NATIONAL ASSOCIATION,

                Defendants.

---

## ORDER REGARDING PENDING MOTIONS TO TRANSFER VENUE

---

Magistrate Judge Shaffer

      THESE CONSOLIDATED ACTIONS come before the court on Defendant CitiMortgage, Inc.'s ("CMI") Motion to Transfer Venue (doc. #4) [hereinafter the "CMI Motion"] and Memorandum in Support of Motion to Transfer Venue (doc. #5), filed on November 2, 2015 in Civil Action No. 15-cv-02375-WJM-CBS.  *Pro se* Plaintiffs Daniel and Margaret Hubbard filed their Memorandum in Response (doc. #15) to the CMI Motion on November 24, 2015, which was followed by Defendant CMI's Reply Memorandum in Support of Motion to Transfer Venue (doc. #17), filed on December 8, 2015.  The CMI Motion was referred to this Magistrate Judge pursuant to a memorandum (doc. #26) dated May 9, 2016.

1

Also pending is Defendants Citi Residential Lending, Inc., CitiMortgage, Inc., and Citigroup Mortgage Loan Trust, Inc.'s (collectively the "Citi Defendants") Motion to Transfer Venue (doc. #25) [hereinafter the "Citi Defendants' Motion"], filed on June 29, 2016 in Civil Action No. 16-cv-01445-WJM-CBS.  The Hubbards have not responded to this motion.

The district judge consolidated Civil Action No. 15-cv-02375-WJM-CBS and Civil Action NO. 16-cv-01446-WJM-CBS with an Order (doc. #36) dated August 9. 2016.  In that Order, the district judge specifically noted that the Hubbards have brought two actions, "both of which appear aimed at preventing foreclosure on their home."  The Order went on to observe that while "the parties in the two actions are not entirely overlapping, the goal of both, apparently, is to invalidate the deed of trust on their residence.  Thus, the two actions present essentially identical questions of law and fact."  The district judge directed this magistrate judge to "docket [an] order resolving the Motion to Transfer (EFC No. 25) both in Civil Action No. 15-cv-2375-WJM-CBS and Civil Action No. 16-cv-1446-WJM-CBS."  This court has reviewed the pending motions and the applicable law, and is sufficiently advised in the premises.  For the following reasons, the court will grant the pending motions to transfer and direct that these consolidated actions be transferred to the District of Minnesota.

## BACKGROUND

The parties' litigious relationship apparently began on April 3, 2015 when CitiMortgage filed a declaratory judgment action in the United States District Court for the District of Minnesota, Case No. 15-cv-01870 (PJS/JSM) [hereinafter "the Minnesota Action"].  In its Complaint, CMI alleges that the Hubbards "are the mortgagers of property in Colorado, upon which [CMI] holds a valid and perfected mortgage."  *See* Exhibit A (doc. # 6-1, at ¶ 10, page 3

of 70), attached to the Affidavit of Thomas J. Lallier (doc. #6).  The Complaint in the Minnesota

Action further alleges that on or about July 8, 2010, Mr. Hubbard sent CMI a "demand note

challenging the validity of the note and mortgage." *Id*. at ¶ 12, page 3 of 70. In his letter, Mr.

Hubbard insisted that CMI prove that it is "the current legal title holder-in-due course to the

property" in question and further asserted that if CMI could not prove the validity of its claim,

the Hubbards' account should "reflect a '0' balance owed and that all liens and encumbrances

placed by CitiMortgage Inc. be removed and cancelled."  Mr. Hubbard also warned that if his

account balance was not "reduced to a '0' . . . other severe penalties for dishonor in commerce,

theft, racketeering, punitive damages, and the theft of public funds . . . will be incurred or

assessed."  *See* Exhibit D (doc. #6-1, at pages 42-43 of 70) appended to the Complaint in the

Minnesota Action and attached to the Affidavit of Thomas J. Lallier (doc. #6).

The Hubbards sent CMI a second demand letter on or about December 28, 2011.  While

that letter purports to advance various legal arguments (most of which are difficult, if not

impossible, to follow), the December 2011 letter closed with a warning that if CMI failed to

"discharge" the Hubbards' account, they would view that "dishonor . . . as a commercial injury,

violation of agreement, fraud, fraud by scienter, violation of commercial law and otherwise."

*See* Exhibit E (doc. #6-1, at page 45 of 70) appended to the Complaint in the Minnesota Action

(page 3 of 10) and attached to the Affidavit of Thomas J. Lallier (doc. #6).  In these and

subsequent letters, the Hubbards took the position that CMI's failure to respond to their demands

and legal arguments "will vitiate the mortgage which [CMI] holds on the property."  The

Hubbards consistently have maintained that they have the "right to rescind, revoke or otherwise

abolish the mortgage rights of [CMI] or note owing to [CMI]."  *See* Exhibit A (doc. # 6-1, at ¶¶

16-18, page 4 of 70), attached to the Affidavit of Thomas J. Lallier (doc. #6).  In the Minnesota

Action, CitiMortgage seeks declaratory relief under the Truth in Lending Act, 15 U.S.C. § 1601

*et. seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, and the Fair Credit

Reporting Act, 15 U.S.C. § 1681, *et seq.*  The Minnesota Action also seeks compensatory

damages for injuries caused by Defendants' "conspiracy to defraud, harass, and injure"

CitiMortgage, as well as injunctive relief barring the Hubbards and their co-conspirator (Daniel

Sellors) "from serving any false and fraudulent papers or pleadings on the Plaintiff."  *See* Exhibit

A (at page 10 of 70), attached to the Affidavit of Thomas J. Lallier (doc. #6).

The Hubbards filed a Response in the Minnesota Action on May 11, 2015.  *See* Exhibit

B (doc. # 6-3), attached to the Affidavit of Thomas J. Lallier (doc. #6).  In that pleading, the

Hubbards asked the district court to "dismiss" CMI's lawsuit and to "Declare RESPONDENTS'

Rights and Status outlined herein."  *Id*. at page 6 of 18.  While their Response is not a model of

clarity, the Hubbards insist that CMI's rights under the mortgage and note have been fully

discharged or supplanted by "CITIMORTGAGE INC.'s acceptance of FULL PAYMENT via the

INTERNATIONAL PROMISSORY NOTE . . . which was received, accepted and kept by

CITIMORTGAGE, INC. on MAY 7th 2014."  *Id*. at page 10 of 18.  The Hubbards further request

that the Minnesota court dismiss them from that action "and injunct PLAINTIFF from further

debt collection activities against RESPONDENTS."  *Id*. at pages 11 and 12 of 18.

Approximately four months after they filed their Response in the Minnesota Action, the

Hubbards initiated litigation in the District Court for Arapahoe County, Colorado.  *See* Exhibit 1

(doc. #1-1), at pages 7-13 of 52, attached to Defendant CitiMortgage, Inc.'s Notice of Removal

in Civil Action No. 15-cv-02375-WJM-CBS.  In their Complaint, the Hubbards maintain that the

note and mortgage on their property were not properly transferred and name as defendants Argent Mortgage Company, LLC; CitiMortgage, Inc., as Argent's successor; and Mortgage Electronic Registration Systems, Inc. as nominee for CMI.  In sum, the Hubbards seek "a declaration that they are the sole title holder to the Property" and a judicial finding "that Defendants, lack any interest in the subject property which would permit them to foreclose, evict, or attempt to foreclose or evict the trust deed and/or to sell the subject properties." *Id*. at page 12 of 52.

The Arapahoe County District Court case was removed to this federal district court on October 27, 2015 by CMI pursuant to 28 U.S.C. §§ 1332, 1441, and 1447.  The Notice of Removal (doc. #1) states that "Plaintiffs and all properly joined Defendants are citizens of different states and the amount in controversy exceeds $75,000."  On November 2, 2015, CitiMortgage, Inc. moved to transfer Civil Action No. 15-cv-02375-WJM-CBS (hereinafter the "2015 Colorado Action") to the District of Minnesota.  After receiving the Hubbards' Memorandum in Response, this court set a hearing for 3:30 pm on June 14, 2016  to address Defendant's CMI's motion to transfer.  On June 3, 2016, Mr. Hubbard filed an emphatic notice (doc. #28) stating "I do not consent to these proceedings!"  Mr. and Mrs. Hubbard did not appear for the hearing on June 14, and did not contact the magistrate judge's chambers to request leave to appear by telephone or to re-schedule the hearing.

Notwithstanding the pending Minnesota Action and the motion to transfer filed in the 2015 Colorado Action, the Hubbards filed another lawsuit in Arapahoe County District Court on or about May 16, 2016, in which they named as defendants GMAC Mortgage Corp., Chase Home Finance, LLC, Citi Residential Lending, Inc., CitiMortgage Inc., Mortgage Electronic

Registry System, Inc., CitiGroup Mortgage Loan Trust, Inc., and U.S. Bank National Association.[1]  This case was removed to the federal district court by the Citi Defendants on June 29, 2016 and designated Civil Action No. 16-cv-0446-WJM-KLM (hereinafter the "2016 Colorado Action").[2]  The Hubbards' First Amended Complaint (doc. #29) in the 2016 Colorado Action alleges, in pertinent part, that on August 14, 2015, CitiMortgage executed an Assignment of Deed of Trust to Citigroup Mortgage Loan Trust which "was recorded in the office of the clerk and recorder" on August 24, 2015.  It is further alleged that "CitiGroup Trust has filed a motion under Rule 120 C.R.C.P in [Arapahoe County District Court] seeking to foreclose the Deed of Trust."[3]  *See* Exhibit 1 (doc. #1-1, at pages 2-7 of 30)  attached to Defendants' Notice of Removal (doc. #1).  The Hubbards' latest lawsuit seeks a declaration "that the Assignment of the Deed of Trust by CitiMortgage, Inc. to Citigroup Mortgage Loan Trust . . . is void."  *Id.* at page 7 of 30.

On June 29, 2016, the Citi Defendants filed a Motion to Transfer Venue (doc. #25) in the 2016 Colorado Action.  From a review of the court's docket, it does not appear that the Hubbards ever directly responded to the Citi Defendants' Motion to Transfer.  However, on August 3, 2016, the Hubbards filed what they designated as "Papers in the Case" (doc. #37) and

---

[1]The Hubbards effectively dismissed GMAC Mortgage Corp, Case Home Finance, LLC, and Mortgage Electronic Registry Systems, Inc. from this action with the filing of their First Amended Complaint (doc. #29) on June 29, 2016.  *See* Minute Order (doc. #32) dated July 5, 2016.

[2]The Notice of Removal avers that "Plaintiffs and all properly joined Defendants are citizens of different states and the amount in controversy exceeds $75,000," and further states that CitiMortgage "is the real party in interest holding the Deed of Trust" to the property at issue.

[3]This court has not been provided with any information as to the current status of any Rule 120 proceedings involving the Hubbards' property.

a  "Memorandum of Law for Papers in the Case" (doc. #37-1).  Mr. Hubbard filed an Affidavit

(doc. #38) on August 3, 2016.  The Hubbards filed what they denominated as "Estoppel by

Record (doc. #40) on August 17, 2016, to which they attached a "Affidavit as Presented by

Daniel Junior Hubbard" (doc. #40-1) and the previously filed "Memorandum of Law for Papers

in the Case" (doc. #40-2).[4]

## ANALYSIS

As a threshold matter, the court should address its authority under 28 U.S.C. §

636(b)(1)(A) and (B) and Fed. R. Civ. P. 72(a) and (b).  The Tenth Circuit has held that

"[m]otions not designated on their face as one of those excepted in [§ 636(b)(1)(A)] are

nevertheless to be treated as such when they have an identical effect."  *First Union Mortg. Corp.*

*v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000), citing *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d

1458, 1462 (10th Cir. 1988).  A number of courts have held, however, that a motion to transfer

---

[4]On closer examination, these rambling submissions seem to address the purported merits of the Hubbards' claims, and do not specifically respond to the Citi Defendants' motion for transfer.  I note that the Hubbards maintain that they are not subject to the jurisdiction of any court that lists their names in "all capitalized letters" and that "the United States District Court **is not a true United States Court** established under Article 3 of the Constitution to administer the judicial power of the United States therein conveyed," citing *Balzac v. People of Puerto Rico*, 258 U.S. 298 (1922) as support for the latter proposition.  *See* Plaintiff's Estoppel by Record (doc. #40), at 5-7 of 26.  *But see United States v. Davis*, No. 2:12-cr-00416-GMN-VCF-1, 2014 WL 5410729, at *3-4 (D. Nev. Oct. 21, 2014) (holding that the defendant's reliance on *Balzac* was "misplaced" because that decision did not address the source of any Article III court's power, but rather concerned whether citizens of Puerto Rico had a Sixth Amendment right to trial, and because the quoted passage from *Balzac* (the same language relied upon by the Hubbards here) does not purport to refer to all United States District Courts, but rather only the United States District Court for the District of Puerto Rico); and *United States v. McQuarry*, No. 13-CR-0164(2) (PJS/LIB), 2014 WL 297724, at *2 (D. Mn. Jan. 27, 2014) (describing as "strange" the defendant's assertion that the capitalized version of her name denotes some kind of legal entity distinct from the defendant's normal spelling of her name).

venue does not have a dispositive effect, even if granted.  *See, e.g., Berentsen v. Titan Tech. Partners, Ltd.,* No. 08-cv-02415-MSK-KMT, 2009 WL 122564, at *1 (D. Colo. Jan. 15, 2009) (holding that a motion to transfer venue was not dispositive in nature because "if granted, it simply would move this litigation from one court to another"); *Vanmeveren v. Int'l Bus. Machs. Corp.*, No. 03-1145-JTM, 2005 WL 3543179, at *2 (D. Kan. Dec. 27, 2005) (holding that defendants' motion seeking an intra-district transfer from Wichita to Kansas City was not dispositive because such a transfer would not prevent any party from pursuing its claims or banish either party from federal court).  *Cf. Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. 13-5805 (ILL), 2014 WL 3748214, at *2 (D.N.J. July 29, 2014); *Siegler v. City of Columbus*, No. 2:12-cv-00472, 2014 WL 1096159, at *2 (S.D. Ohio Mar. 19, 2014); *Skolnick v. Wainer*, No. CV 2013-4694 (WFK)(MDG), 2013 WL 5329112, at *1 n.1 (E.D.N.Y. Sept. 20, 2013); *United States v. $21,055.00 in U.S. Currency*, No. 08-1273-WEB-DWB, 2010 WL 2044674, at n.1 (D. Kan. May 24, 2010).[5]  In light of the foregoing case law, I will treat the pending motions as seeking non-dispositive relief.

The legal standard that must guide this court's substantive analysis should not be in dispute.  Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought, "for the convenience of parties and witnesses, in the interests of justice."  Underlying this venue transfer statute are the laudable goals of preventing "the waste 'of time, energy, and money' and 'protect[ing] litigants, witnesses, and the

---

[5]*But see Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 13-1069, 2014 WL 279698, at *2-3 (W.D. Tenn. Jan. 23, 2014) (noting a lack of consensus among courts, but concluding that a motion to transfer venue is dispositive because it terminates case activity in that particular forum), *vacated and remanded on other grounds,* 590 F. App'x 482 (6th Cir. 2014).

public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge, F.B.L.–585,* 364 U.S. 19, 26-27 (1960)).  The court retains discretion to resolve motions to transfer based upon an individualized, case-by-case consideration of convenience and fairness.  *Wada v. U.S. Secret Serv.*, 525 F. Supp. 2d 1, 9 (D.D.C. 2007); *Ervin & Assocs., Inc. v. Cisneros*, 939 F. Supp. 793, 799 (D. Colo. 1996).

As the moving parties here, CMI and the Citi Defendants have the burden to show that these actions could have been brought in the alternative forum, that the existing forum is inconvenient, and the interests of justice are better served in the alternate forum.  *Wolf v. Gerhard Interiors, Ltd.*, 399 F. Supp. 2d 1164, 1166 (D. Colo. 2005).  *See also Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1191 (D. Colo. 1999); *Chubb v. Union Pac. R. Co.*, 908 F. Supp. 853, 855 (D. Colo. 1995).  Under 28 U.S.C. § 1391(a), an civil action based on diversity jurisdiction may be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced.  The Hubbards have not disputed Defendants' assertion that the Hubbards could have brought their claims originally in the District of Minnesota.

Normally, "unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed."  *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (quoting *William A. Smith Contracting Co., Inc. v. Traveler's Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).  *See also Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 n. 13 (10th Cir. 2010) ("For more than five decades, we have required the movant to demonstrate that the

balance of factors 'strongly favors' a transfer of venue under § 1404(a).").  In applying §

1404(a), the district court should weigh several factors, including the plaintiff's choice of forum,

> the accessibility of witnesses and other sources of proof, including the availability
> of compulsory process to insure attendance of witnesses; the cost of making the
> necessary proof; questions as to the enforceability of a judgment if one is
> obtained; relative advantages and obstacles to a fair trial; difficulties that may
> arise from congested dockets; the possibility of the existence of questions arising
> in the area of conflicts of laws; the advantage of having a local court determine
> questions of local law; and, all other considerations of a practical nature that make
> trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Cty. Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).  *See also*

*Four Corners Nephrology Assoc's*, *P.C. v. Mercy Med. Center*, 464 F. Supp. 2d 1095, 1098 (D.

Colo. 2006) (factors relevant to a transfer under § 1404(a) include the plaintiff's choice of

forum, the convenience of witnesses, the accessibility of witnesses and other sources of proof,

the possibility of obtaining a fair trial, and all other considerations of a practical nature that make

a trial easy, expeditious and economical).  However, the *Chrysler Credit Corp.* factors have little

applicability in this case given the earlier action commenced by CMI in the District of

Minnesota.  *See, e.g., Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,

474 F. Supp. 2d 474, 486 (S.D.N.Y. 2007) (noting that "[d]eference to a plaintiff's choice of

forum can . . . be overcome by application of the first-filed rule"), *aff'd*, 599 F.3d 102 (2nd Cir.

2010).

The first-to-file doctrine "applies 'when two district court have jurisdiction over the same

controversy, affording deference to the first filed lawsuit."  *Crocs, Inc. v. Cheng's Enters., Inc.*,

No. 06-cv-00605-PAB-KMT, 2015 WL 5547389, at *3 (D. Colo. Sept. 21, 2015) ("when related

cases are pending before two federal courts, the court in which the case was last filed may refuse

to hear it if the issues raised by the cases substantially overlap").  "The rule is a discretionary

doctrine, resting on 'principles of comity and sound judicial administration' and is concerned with avoiding duplicative litigation, rulings which impinge on the authority of sister courts, and piecemeal litigation." *Id.* (citing *Cadle Co. v. Whataburger of Alice, Inc.*, 173 F.3d 599, 603 (5th Cir. 1999)).  The first-to-file doctrine recognizes that "[t]he simultaneous prosecution in two different courts of cases relating to the same parties and issues 'leads to the wastefulness of time, energy and money.'" *Animal Health Int'l, Inc. v. Livingston Enters., Inc.*, No. 12-cv-00369-LTB, 2012 WL 1439243, at *2 (D. Colo. April 26, 2012) (quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965)).  *Cf. D & L Distrib., LLC v. Agxplore Int'l, LLC*, No. 12-cv-00810, 2013 WL 1234810, at * 4 (E.D. Pa. 2013) ("The first-filed rule is 'grounded in equitable principles' and 'encourages sound judicial administration and promotes comity among federal courts of equal rank.") (quoting *EEOC v. Univ. of Penn.*, 850 F.2d 969, 971 (3rd Cir. 1988); *Wallace B. Roderick Revocable Living Tr. v. EXTO Energy, Inc.*, 679 F. Supp. 2d 1287, 1297 (D. Kan. 2010) ("The first-to-file rule 'normally serves the purpose of promoting efficiency well and should not be disregarded lightly.") (quoting *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979)).

The first-to-file rule doctrine provides that "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated." *See Keymark Enters., LLC v. Eagle Metal Prods.*, No. 08-cv-00662-REB-MEH, 2008 WL 4787590, at *3 (D. Colo. Oct. 30, 2008) (quoting *Cessna*, 348 F.2d at 692).  *Cf. Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir.1982) (asserting the general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches under the first-

to-file rule has priority to consider the case).

> Courts generally hold that the threshold determination under the first to file rule requires analysis of three considerations: "(1) the chronology of events; (2) the similarity of parties; and (3) the similarity of issues." The parties to the two actions need not necessarily be identical, and "the issues must only be substantially similar in that they seek like forms of relief and hinge on the outcome of the same legal/factual issues."

*Crocs, Inc.*, 2015 WL 5547389, at *3 (internal citations omitted).

A court should depart from the first-to-file doctrine only in "extraordinary circumstances" involving inequitable conduct, bad faith, anticipatory suits or forum shopping. *Wallace B. Roderick*, 679 F. Supp. 2d at 1298. In addressing how the first and second filed courts should apply the first-to-file doctrine, the consensus view appears to be that "the proper course is for the second filed court to make the initial determination of whether the two actions substantially overlap." *Crocs, Inc.*, 2015 WL 5547389, at *3.

> If a second filed court decides that question in the affirmative, it may stay the case, transfer it to the first filed court, or, in rare cases, dismiss the case entirely; it then falls to the first filed court "to determine whether subsequently filed cases involving substantially similar issues should proceed."

*Id. Cf. Keymark,* 2008 WL 4787590, at *3, (noting that "[t]he second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy") (quoting *Wallace B. Roderick,* 679 F. Supp. 2d at 1297).

Here, I find that the Hubbards commenced their state court actions after CMI initiated litigation against the Hubbards in the State of Minnesota and litigation in that district was joined. I further find that the state court actions removed to this court address issues and implicate facts that are substantially similar to the issues and facts raised in CMI's Minnesota action. In essence, each of these actions seeks a judicial determination as to whether the note and mortgage

to the Hubbards' real property in Centennial, Colorado was legally assigned to CitiMortgage and whether CitiMortgage thereby acquired a valid and enforceable interest in the subject property. Through their state court actions, the Hubbards essentially seek the same judicial determination they requested in their Answer/Response filed in the Minnesota Action.[6]  Moreover, I find that the goals of judicial economy and consistency are better advanced by transferring the action to the District of Minnesota, in lieu of staying proceedings in the District of Colorado.  *Cf. Equity Bank v. U.S. Bank Nat'l Ass'n*, No. 12-1311-JWL, 2012 WL 5587854, at *3 (D. Kan. Nov. 11, 2012) (the court denied defendant's motion to dismiss, but transferred the pending action to the District of Minnesota pursuant to the first-filed rule).

## CONCLUSION

Accordingly, for the foregoing reasons, this court hereby GRANTS  Defendant CitiMortgage, Inc.'s Motion to Transfer Venue in Civil Action No. 15-cv-02375-WJM-CBS, and Defendants Citi Residential Lending, Inc., CitiMortgage, Inc., and Citigroup Mortgage Loan Trust, Inc.'s Motion to Transfer Venue (doc. #25) in Civil Action No. 16-cv-01446-WJM-CBS. The Clerk of Court shall transfer these consolidated actions to the District of Minnesota for further proceedings in that forum if Plaintiffs fail to file an objection pursuant to Fed. R. Civ. P. 72(a) within fourteen (14) days of being served with a copy of this Order or unless otherwise

---

[6]While these findings suffice to warrant transferring the consolidated actions to the District of Minnesota, I also note that the Hubbards have not come forward with any convincing showing that CMI initiated its action in Minnesota in bad faith or as an exercise in forum shopping.  *Cf. D & L Dist.,* 2013 WL 1234810, at *9 (holding that the defendant's "desire to litigate an apparently meritorious claim in a familiar forum does not establish the requisite bad faith necessary to depart from the application of the first-filed rule").  I also find nothing in the available record to show that transferring this action to the District of Minnesota will disadvantage the Hubbards in any material respect.

directed by the district judge.

**Advisement to the Parties**

      Within fourteen days after service of a copy of this Order, a party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1).  The district judge in these consolidated cases may consider timely objections and modify or set aside any part of the magistrate judge's Order that is clearly erroneous or contrary to law.  *See* Fed. R. Civ. P. 72(a).  A general objection that does not put the district judge on notice of the basis for the objection may not preserve the objection for later review and failure to make timely objections may bar a party from assigning as error a defect in the Order not timely objected to.

      Dated this 31th day of August, 2016.

                            BY THE COURT:


                            s/ Craig B. Shaffer
                            United States Magistrate Judge